White, J.
The present case has been elaborately argued, and the authorities, collected and examined by counsel, indicate much research. We can not examine, in detail, the various cases, and rules of construction, urged by the respective counsel as applicable to the present case, and, the application of which, it is claimed, would determine the controversy.
It has become a formula, in the construction of wills, that the intention of the testator must govern. This intention must, of course, be ascertained from the language of the instrument, as applied to the subject matter, and the surrounding circumstances.
The rule for construing the language of a will is less rigid than it is in regard to any other instrument. It is not, necessarily, to be viewed technically, and, with strict grammatical *109 accuracy, but sensibly and liberally, in order to give effect to intention. 4 Ohio St. Rep. 351. In whatever language an intended disposition is expressed, if the disposition itself be not unlawful, it must follow the ascertained intent. The value of rules of construction, when confined to their proper office, can not be over estimated. They are to be resorted to as a means to aid in arriving at the intention of the tastator; but, never to be adhered to, when such adherence would thwart the obvious intention as gathered from the whole will.
The same remarks may be made with regard to particular cases. They are to be used as aids in the investigation, and, assuming their intrinsic s’oundness, their just weight will be in proportion to their analogical completeness. Where the essential data do not correspond: — e. g. — the terms of the will, the subject matter, and the material relations and surroundings attending the cases — it will not do to .make one case, unquestioned, the standard for the decision of another. And, while too strongly stated for entire accuracy, yet there is much force in the language' of Justice Wilmot, that:
“ Every case stands upon the evidence of the testator’s intention, arising out of each will. In questions of intention, cases, unless they coincide in words, and every other circumstance, never assist, but perplex, the exposition. A will ifs the picture of a man’s mind; and one may as well look at the picture of one man to know the person of another, as to lool: at the will of one mind to know the mind of another.” Keiley v. Fowler, Wilmot’s Notes and Opinions, 319.
But, to proceed to the will in question :
The first two clauses are disposing and operative clauses. The language is (1) “First, I give and bequeath unto my beloved wife, Mary Ann Alter, all my personal estate, goods and chattels, of what nature soever.” (2) “ I also wish and desire that all my real estate be equally divided between my children, namely, Charlotte, the wife of James Clark; Catharine, the wife of Jacob Clark; William, my son; Charles, my son; and John, my son; Mary Ann, Susan, and Harriet, my younger daughters.”
*110 By the first, all his personal estate is given to his wife alone; and as there was to be neither division, nor a postponement of her enjoyment, no further mention of it was necessary, or is made in the subsequent parts of the will.
By the second, all his real estate is given to his seven children named; but it was to be equally divided. This division was required to give to each an equal amount in value. It might have been left to be effected in the mode provided by law; or, by amicable agreement among the children; or, the testator might himself direct the mode. This, by the subsequent provisions of the will, he did. He designed the sons to have the several tracts of land given to them respectively, and, as these lands were of different values, the “town property” alone remained from which the division could be made equal. To effect this object he directs, that after the death of ■ his wife, it be sold, and the proceeds divided in a manner that will, according to one construction, produce the exact equality, among his children, required by the second clause above referred to.
It can not be denied that if the two clauses named, stood alone, they would dispose of the whole estate, to take effect immediately. And while it is also true that if the second clause had been omitted, the remaining portions of the will would have ultimately disposed of the whole estate; yet, it might not have been to the same persons. The sons would have taken a present vested interest, the daughters a future contingent one.
But neither the second nor any subsequent provision can be rejected; but, so far as possible, effect must be given to all. The object of the clause directing the sale of “the town property” and the division of the proceeds, is not to confer title, but to effect an equal division of what had been already given.
The construction which the plaintiffs’ counsel claims should be put upon the clause in question, is thus stated in his printed argument:
“I do not understand the second clause, in which the tes *111 tator expressed his ‘ wish’ and ‘ desire’ that his real estate should be equally divided among his children, to be a material, much less a controlling part of the will. It is not a willing or disposing clause. What the testator meant by it, and all he meant was, a simple, bare declaration, or assurance to all concerned, that in the disposition of the residue of his property — his realty — which he was about to make, he intended to have regard to the principle of equality — equal, not unequal, distribution among his children.”
But to deny to the clause the dispositive character which we have already stated in our opinion it should have, would violate the principle of equality in the distribution, of which, it is claimed, the testator wished to give assurance.
Besides, in the last clause of the will preceding that appointing his executors, and which may be designated the eighth, the right of possession of the sons is clearly postponed to the period at which they respectively become of age. The following is the language:
“ It is, also, my will and desire, that each of my sons get possession of the before mentioned lands as they arrive at age, excepting my youngest son, John; my will is, that all the land given to him, with all the privileges and appurtenances thereunto belonging, remain and belong to my beloved wife, Mary Ann Alter, during her lifetime or widowhood; but that after her death my son John, to have possession, provided he is of full age, and not before.”
There is no just grounds from which to infer that the words “my will and desire” were intended to be operative words here and not in the second clause.
The testator, after the second clause, already referred to, gave to each of his sons, his heirs, or assigns, a specific tract of land of a specified value; limited the time of entering into possession to the period at which each should become of age, except John (whose right might be postponed beyond that period); and directed that each of his children should “draw their proportion” of the rents of the town property from the same period. After the sale of the town property, *112 he directed the proceeds, including the several sums given to his three sons in land, and the money and other property given to his sons-in-law and charged to them, to be equally divided among his “ then living children or their heirs.”
The plaintiffs claim that the term heirs is used as a word of purchase, and that, the decease of their mothers having taken place before the period.for making the sale had arrived, they are the persons designated to take the proceeds. And, that the devise or bequest was contingent, and did not vest until the period for the sale, or, if it did, that it then shifted and vested in them.
Construed literally, the term “ heirs,” as used in the phrase u my then living children or their heirs,” would stand as a word of limitation, having reference to the children then living. But referring it to the living children alone, would cut off every class of representatives of those deceased, and be against the manifest intention. A literal construction of the language would exclude the plaintiffs. They, however, admit that the Avords “ or their heirs,” mean the heirs of the children then deceased. But they claim that they do not derive title under or through their respective mothers, but immediately under the will, and as direct objects of the gift. If their standing is* that of purchasers, the only source of their title is the clause of the will directing a division; and, as before stated, we do not regard this clause as creating title, but as directing the time and mode of completing the division of what had already been given.
In view of the other provisions of the will, we agree that the words “ or their heirs ” were designed to provide for the case of such of his children as might die before the time for final distribution. But they were not designed to provide a neAV class of beneficiaries. “ Heirs ” is. used as a word of limitation, and those only, under it, can claim to share in the distribution, who derive title under, or through, a deceased child. All Avho stand in the place of such children, as regards the property in controversy, whether by purchase or operation of law, are entitled to share in the division — none others are. *113 For example: The testator gave to Charles and “ his heirs,” in land, $1635.00. To the others a much larger amount. The final division’ was to include the amounts given to the sons in land, the amount of money and property advanced and charged to the sons-in-law, as well as the proceeds of the sale of the town property. As he had received much less than his brothers, he would be entitled to share in the town property. His right to the possession of the land was postponed until he became of age, at which time he was, also, to draw his proportion of the rents of the town property. His interest in the latter was no more contingent than in the former. And the term “ heirs ” is used in the same sense, in the distributing clause, as in the specific devise to Charles.
In the event of his death before distribution, the character of his estate or interest, in neither property would have been, thereby, in any wise, changed; but would have passed to those representing him, whether they claimed by purchase, or under the law. The term has the same meaning as applied to the interest of each of the other children, as it does as applied to the interest of Charles.
We can discover in this will no intention, on the part of the testator, to discriminate against the daughters; but, on the contrary, a manifest design to place all of his children on an equal footing. The specific devises to the sons, we regard as in part execution of the equal division which he desired to effect, as expressed in the second clause; and the sale of the town property and the division of the proceeds, in the manner directed, as designed, merely, to consummate this division.
As the plaintiffs could only take through their parents, and, as the latter conveyed all their interest in their lifetime, the former acquired no title to the premises.
Their petition, therefore, was properly dismissed, and the relief, asked by the defendants, granted.
Brinkerhoee, C.J., and Scott, Ranney, and Wilder, JJ.,, concurred.